IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DIGACOMM, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 08-MC-63-JJF |
| ) | |
| VEHICLE SAFETY & ) | |
| COMPLIANCE, LLC, ) | |
| PITTCO CAPITAL PARTNERS, L.P, ) | |
| PITTCO CAPITAL PARTNERS II, L.P., ) | |
| ANDREW SEAMONS, J.R., and ) | |
| J.R. "PITT" HYDE, ) | |
| ) | |
| Defendants. ) | |

**OPPOSITION TO PETITION TO SHOW CAUSE TO FISH & RICHARDSON P.C.**

In opposition to the petition for rule to show cause (the "Petition") filed by DigaComm, LLC ("DigaComm") on March 31, 2008, Fish & Richardson P.C. ("F&R") states as follows:

**INTRODUCTION**

1.  In the Petition, DigaComm seeks sweeping sanctions against F&R for failing to respond fully to the broad subpoena that DigaComm served on F&R's registered agent just thirty-one days before filing its Petition. DigaComm's subpoena demands production within eighteen days of service on F&R's registered agent of all documents responsive to DigaComm's eighteen expansive categories of documents. Those eighteen document requests by their terms seek virtually every document obtained or prepared by F&R in connection with its representation of client Vehicle Safety & Compliance, LLC ("VSAC") and its subsidiary, Vehicle IP, LLC ("VIP"), over the course of the last three years in several different matters managed out of several different F&R offices. In its Petition, DigaComm concedes that its counsel, Kirkland &

Ellis LLP ("K&E"), had multiple discussions and emails with F&R and F&R assured K&E that it was in the process of gathering and reviewing the tens of thousands of pages of documents sought in order to respond to the subpoena. Indeed, F&R has now filed its objections and responses to the subpoena and produced its non-privileged, relevant and responsive documents and made some 50,000 plus pages of aged documents of dubious relevance available to DigaComm for inspection. Nevertheless, DigaComm and its counsel raced to Court to file its Petition and have refused to withdraw the Petition, continuing to press for sanctions. Specifically, DigaComm seeks (i) a contempt of Court order against F&R, (ii) waiver of any objections, including waiver of F&R's assertions of attorney-client and work product privileges on behalf of its clients, and (iii) payment of DigaComm's costs and attorneys' fees in connection with the enforcement of its subpoena.

2.  What DigaComm fails to tell the Court was at the time they served the subpoena on F&R, DigaComm also served directly on F&R's clients VSAC and VIP virtually identical document requests under Rule 34 of the Federal Rules of Civil Procedure. DigaComm's subpoena on F&R is a transparent attempt to end-run the federal discovery rules by obtaining from F&R through subpoena substantially the same documents that it sought from VSAC and VIP, but in less time. The subpoena sought to obtain in about two weeks from F&R what DigaComm could not obtain from F&R's clients in that time frame. Worse, DigaComm and its counsel now ask this Court to waive those clients' attorney-client and work product privileges because it took F&R forty-one days from service of the subpoena to fully respond. That way, DigaComm hopes to obtain all of VSAC's and VIP's most sensitive intellectual property records unencumbered by any claim of privilege, and hopes to be paid its own fees in the process.

3.      DigaComm's Petition should be rejected. DigaComm has received in a timely manner the non-privileged, non-duplicative, relevant and responsive documents that it purports to seek.

## **BACKGROUND**

4.      DigaComm is a plaintiff in an action against the above-referenced defendants pending in the U.S. District Court for the Northern District of Illinois. Freeborn & Peters LLP ("Freeborn") represents the above-referenced defendants in that action. Contrary to DigaComm's representations in its Petition, F&R does not represent those defendants in the Illinois litigation and has never entered an appearance in that action. *See* Declaration of Cathy L. Reese, Esquire, dated April 14, 2008 ("Reese Dec.") at ¶ 2 and Exhibit A (DigaComm's Complaint in the Illinois litigation) and Exhibit B (Docket from the litigation in the U.S. District Court for the Northern District of Illinois).

5.      DigaComm is also a claimant in an arbitration against VIP and Bradley Larschan ("Larschan") pending before the American Arbitration Association ("AAA") in Wilmington, Delaware. Freeborn represents VIP and Larschan in the AAA arbitration. F&R serves as local counsel to VIP and Larschan in the AAA arbitration. *Id.* at ¶ 3 and Exhibit C (DigaComm's Arbitration Demand).

6.      Since 2005, F&R has represented VIP and its corporate parent VSAC in the development and commercialization of their patent portfolios. *Id.* at ¶ 3

7.      The Illinois litigation and AAA arbitration relate to a letter agreement between DigaComm and VIP dated March 30, 2007 (the "Letter Agreement"). The Letter Agreement provides that DigaComm will "provid[e] assistance to VIP in negotiating an asset purchase agreement" with General Electric ("GE") in return for which "VIP's management agrees to

recommend to VSAC Preferred Holders that it is in the best interests of such VSAC Preferred Holders to approve [the Letter Agreement]." Defendants in the AAA arbitration contend, among other things, that DigaComm failed to fulfill its obligation to provide assistance to VIP in negotiating the agreement with GE, which was signed on August 16, 2007. Those Defendants further contend that, unlike DigaComm, VIP's management team fulfilled VIP's obligation by recommending to VSAC's Preferred Interest Holders (the "Preferred Interest Holders" or "Preferred Holders") that they approve the Letter Agreement. VIP had no duty or ability to ensure that the Preferred Interest Holders approve the Letter Agreement and, in fact, DigaComm specifically acknowledged that the agreement "is subject to the approval of a majority of the VSAC Preferred Holders, and that such approval has not yet been obtained." Notwithstanding the management team's recommendation, a majority of VSAC's Preferred Interest Holders voted against the Letter Agreement and the Cash Waterfall Proceeds payment to DigaComm. DigaComm nonetheless claims that it is entitled to the Cash Waterfall Proceeds.

8. On February 26, 2008, DigaComm issued two subpoenas to F&R, one of which is the subject of DigaComm's Petition and is attached as Exhibit 1 to the Petition. The subpoenas each contained eighteen separate document requests seeking materials related to F&R's representation of VIP over the course of three years in connection with several different transactions, including transactions related to VIP's acquisition, analysis of and monetization plans for some sixty-eight patents. The documents sought by this subpoena number in the tens of thousands and, as one might imagine, are largely privileged and highly sensitive. Yet, DigaComm sought production of these documents within eighteen days of the date the subpoena was served on F&R's registered agent in Delaware, demanding production by March 18, 2008. While DigaComm asserts that it does not seek attorney-client privileged information, the fact is

that virtually every document DigaComm seeks was generated in or produced by F&R or its client in the course of an attorney-client representation. To obtain the non-privileged documents that are responsive, F&R must cull through tens of thousands of documents to determine which documents are responsive and not privileged.

9. The subpoena at issue was first served on Friday afternoon, February 29, 2008, on F&R's registered agent in Delaware, The Corporation Trust Company. The subpoena was routed to F&R's Human Resources Department in Minneapolis, Minnesota on March 4, 2008 and was then forwarded that same day to F&R's Ethics & Conflicts Director and Special Counsel, John J. Steele ("Steele"). DigaComm's subpoenas were not served on the F&R attorneys involved in the AAA arbitration, and DigaComm never provided a courtesy copy of those subpoenas to the F&R attorneys involved in the AAA arbitration. *Id.* at ¶¶ 4-5 and Exhibit D (Service of Process Transmittals).[1]

10. F&R is an international law firm with eleven offices and over 500 attorneys located throughout the United States and in Europe. *Id.* at ¶ 1.

11. DigaComm's two subpoenas each contained eighteen separate document requests, seeking documents relating to several different matters and time periods that involved patent attorneys located in several F&R offices. For example, the subpoenas sought any and all documents "relating to the acquisition of patents that constitute the VIP Patent Portfolio," which would encompass documents relating back to 2005 and for the most part have no relevance to the underlying litigation in Illinois and AAA arbitration. The subpoena also sought any and all

---

[1] DigaComm claims that prior to issuing the subpoena, DigaComm's counsel requested that F&R's "litigation partner . . . voluntarily accept service of DigaComm's requests for documents." As stated above, F&R was not involved in the Illinois litigation and only served as local counsel in the AAA arbitration. Due to an administrative error, F&R did not receive that correspondence. Having said that, DigaComm never provided the F&R attorneys involved in the AAA arbitration with a courtesy copy of the subpoenas after the subpoenas were issued. *Id.* at ¶¶ 2-3, 6-7.

documents "relating to efforts to Monetize the VIP Patent Portfolio," which also could conceivably encompass thousands of documents spanning from 2005 to the present, including privileged documents generated in the course of F&R's representation of VIP in bringing certain patent infringement litigation.

12. Once the subpoena actually reached Steele in F&R's Redwood City, California office on March 4, 2008 — the week after it was served on F&R's registered agent in Delaware — Steele started the extensive process of responding to DigaComm's subpoena and coordinated with the F&R attorneys that may possess documents responsive to DigaComm's subpoena. *See* Declaration of John J. Steele, Esquire, dated April 14, 2008 at ¶¶ 2, 4. However, F&R was unable to comply with the DigaComm subpoena by March 18, 2008 and, inadvertently, through miscommunication between Steele and the Delaware office of F&R, failed to make DigaComm's counsel aware of this fact prior to March 23, 2008. *See* Reese Dec. at ¶ 8.

13. On Easter Sunday, March 23, 2008, DigaComm's counsel for the first time contacted F&R attorneys Cathy L. Reese ("Reese") and Brian M. Rostocki ("Rostocki") regarding the subpoena and the timing of the production sought by it. *See* Reese Dec. at ¶ 9 and Exhibit E (email from Stephen Hackney, Esquire to Cathy L. Reese, Esquire and Brian M. Rostocki, Esquire, dated March 23, 2008). As DigaComm's counsel acknowledges, Rostocki spoke with DigaComm's counsel that same day, Easter Sunday, and the next day put DigaComm's counsel in contact with Steele. *Id.*

14. On March 24, 2008, Steele explained to DigaComm's counsel that he needed to research and coordinate efforts relating to the subpoena. *See* Steele Dec. at ¶ 4; Reese Dec. at ¶ 10. DigaComm's counsel argues that F&R was delinquent in responding to its requests.

However, Steele inquired whether K&E was available to discuss the subpoena on March 28, 2008 and K&E failed to respond to Steele's email. *See* Steele Dec. at ¶¶ 4-6. F&R was attempting to coordinate a response to DigaComm's subpoena and believed it was working with DigaComm's counsel in doing so. But, on March 31, 2008, DigaComm filed the Petition. *Id.* at ¶ 5; Reese Dec. at ¶ 10. F&R has attempted to resolve this matter with DigaComm's counsel without any motion practice before this Court. F&R has provided DigaComm with its initial objections, responses and document production, and F&R has produced substantially all other relevant and responsive documents not subject to the attorney-client and work product privileges. *See* Reese Dec. at ¶ 11. Yet, DigaComm has refused to withdraw the Petition, thereby requiring F&R to file this opposition to the Petition. *Id.* at ¶ 14. For the reasons set forth below, DigaComm's Petition should be denied.[2]

## ARGUMENT

15.  First, F&R has not sought to deliberately or intentionally circumvent the discovery procedures of this Court or the U.S. District Court for the Northern District of Illinois. *Id.* at ¶ 12. F&R's failure to comply fully with DigaComm's subpoena by March 18, 2008 was inadvertent and certainly excusable given the magnitude and nature of the requests seeking thousands of privileged and highly confidential documents and that F&R did not receive from DigaComm the subpoena until March 4, 2008 — some two weeks before the response to DigaComm's overly broad and sensitive document requests were due.[3] Yet, F&R promptly and

---

[2] DigaComm incorrectly filed this matter as a petition to show cause. The Court has advised that it will treat DigaComm's Petition as a motion to compel and has so indicated on the Court's docket. (D.I. 1).

[3] As explained above, the litigation in Illinois and the AAA arbitration relate to DigaComm's efforts to obtain payment under a Cash Waterfall Proceeds provision in the Letter Agreement between VIP and DigaComm relating to the transaction between VIP and GE. However, the document requests in DigaComm's subpoena, for the most part, are on their face overbroad and irrelevant to the subject matter of the Illinois litigation and AAA arbitration.

7

in good faith attempted to work out a resolution with DigaComm's counsel. In fact, F&R provided its initial objections, responses and document production to DigaComm on April 7, 2008, and on April 11, 2008 F&R has produced and made available for inspection substantially all other relevant, responsive and non-duplicative documents not subject to the attorney-client and work product privileges. *Id.* at ¶ 11. Thus, DigaComm's Petition is moot. *See Funai Elec. Co., Ltd. v. Orion Elec. Co.*, 2002 WL 1808419, at *5 (S.D.N.Y. Aug. 7, 2002) (denying motion to compel, in part, where non-moving party agreed to produce the documents in question); *Noah v. Saint Louis County, Mo.*, 2007 WL 1018671, at *1, *3 (E.D. Mo. Mar. 29, 2007) (denying "plaintiffs' motion to compel and for sanctions . . . based on defendants' representation that it will produce the documents once the protective order is entered.").

16.     Second, at the time DigaComm served the subpoena on F&R, DigaComm also served directly on F&R's clients VIP (on February 21, 2008) and VSAC (on February 26, 2008) virtually identical requests for production of documents in connection with the Illinois litigation and AAA arbitration. *Compare* Reese Dec. at Exhibit F (DigaComm's document requests to VIP and VSAC) *with* Exhibit 1 to DigaComm's Petition (DigaComm's subpoena to F&R). DigaComm's subpoena on F&R amounts to an end-run around the federal discovery rules by obtaining from F&R through subpoena substantially the same documents that DigaComm sought directly under Rules 26 and 34 of the Federal Rules of Civil Procedure from F&R's clients, but in less time. It is well-established that such discovery abuses should be prohibited. *See Thomas v. IEM, Inc.*, 2008 WL 695230, at *2 (N.D. La. Mar. 12, 2008) (explaining that subpoenas under Rule 45 "are 'clearly not meant to provide an end-run around the regular discovery process under Rules 26 and 34'" and that "'if documents are available from a party, it has been thought

preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them' pursuant to Rule 45."); *Burns v. Bank of Am.*, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007) (same).

17.  In addition, VIP previously provided F&R with a set of documents that are potentially responsive to DigaComm's subpoena. F&R returned a copy of those documents to VIP so that VIP could forward those documents and any additional potentially responsive documents to Freeborn. The documents F&R returned to VIP consist of a bulk of the documents in F&R's possession that would be responsive to DigaComm's subpoena. Freeborn is in the process of reviewing those documents to determine which ones are responsive to DigaComm's requests to VIP and VSAC and are not subject to the attorney-client privilege or work product doctrine. In fact, Freeborn has started to produce those documents that are responsive and not subject to any privilege or immunity. Further, the court in the Illinois litigation ordered that the defendants in the Illinois litigation produce discoverable information, which includes the non-privileged, responsive documents that were forwarded to Freeborn by VIP, on a rolling basis and that the production be completed by April 21, 2008. *See* Reese Dec. at ¶ 13 and Exhibit G (April 9, 2008 Minute Order from the U.S. District Court from the Northern District of Illinois). Because DigaComm has and will receive the very same documents from Freeborn, F&R should not be required, under Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure, to incur the expense and burden to reproduce these same documents. Further, DigaComm is not permitted to obtain discovery from F&R, VIP's and VSAC's counsel, to the extent such discoverable information will be made available through VIP and VSAC. *See* Charles Alan Wright, Arthur R. Miller and Richard L. Marcus, Federal Practice and Procedure, § 2026 (2008) (explaining that information may only be discovered from a party's attorney if such information is otherwise discoverable and *"**may be obtained in no other way**"*) (emphasis added).

18.     Third, even if F&R's conduct were sanctionable — and it is not — F&R should not be barred from raising objections to DigaComm's subpoena. To the extent documents responsive to DigaComm's subpoena are subject to the attorney-client and work product privileges, F&R cannot waive those privileges belonging to the client and should not be subject to waiver based on that attorneys' conduct, particularly where, as here, there is no allegation that the client participated in the challenged response to the subpoena. *See Haines v. Liggett Group Inc.*, 975 F.2d 81, 90 (3d Cir. 1992) ("the privilege belongs to the client, and only the client may waive it"); *DiPalma v. Medical Maven Ltd.*, 1998 WL 123009, at *3 (E.D. Pa. Feb. 10, 1998) ("The attorney-client privilege belongs to the client and can be waived only by the client"); *United Steelworkers of America, AFL-CIO-CLC v. Ivaco*, 2002 WL 31932875, at *6 (N.D. Ga. Jan. 13, 2003) (while the work product privilege belongs to the attorney and client, an attorney cannot waive that privilege for the client).

19.     Moreover, courts have recognized that waiver of the attorney-client privilege is an extreme sanction; therefore, it should be reserved for cases of unjustifiable delay, inexcusable conduct, or bad faith in responding to discovery requests. *See United Steelworkers of America, AFL-CIO-CLC*, 2002 WL 31932875, at *4. Here, DigaComm seeks documents relating to a large number of matters over a number of years involving F&R's representation of its client based out of various F&R offices. Even for a large international law firm like F&R, with an honorable practice stretching back 130 years, DigaComm's overly-broad subpoena required extensive effort at several offices. Additionally, on March 23, 2008, the first time F&R was contacted regarding the subpoena by DigaComm's counsel, Rostocki, an F&R attorney, spoke with DigaComm's counsel that same day, Easter Sunday, and attempted to work out an amicable resolution. F&R also attempted to follow up with K&E regarding the subpoena, but K&E did

not respond to F&R's inquiries and instead filed the Petition. F&R has since provided its initial objections, responses and document production, and produced and made available for inspection substantially all other responsive documents not subject to the attorney-client and work product privileges. Thus, there has been no unjustifiable delay, inexcusable conduct, or bad faith on the part of F&R. *See* Steele Dec. at ¶¶ 2-6; Reese Dec. at ¶¶ 4-12.

20.  Based on these facts, F&R should also not be barred from raising any other objections to DigaComm's subpoena. Courts have refused to hold that discovery objections are waived "if the delay is not substantial." *See Wilson v. Kautex*, 2007 WL 4179018, at *1 (N.D. Ind. Nov. 20, 2007). Here, a comprehensive response to DigaComm's subpoena within forty-one days after the subpoena was served on F&R's registered agent in Delaware is hardly substantial delay for responding to eighteen broad document requests for privileged and sensitive material stretching back some three years. On March 23, 2008, the first time DigaComm contacted F&R regarding the subpoena, F&R immediately spoke with DigaComm's counsel on Easter Sunday and attempted to work out an amicable resolution. On April 7, 2008, F&R provided DigaComm with its initial objections, responses and document production. On April 11, 2008 F&R produced and made available for inspection substantially all other relevant and responsive documents (i) not subject to the attorney-client and work product privileges, and (ii) not being produced by Freeborn by April 21, 2008, pursuant to the same requests made on F&R's clients directly. *See* Reese Dec. at ¶¶ 4-13 and Exhibit G. Thus, any delay on the part of F&R is *de minimis* and does not provide a basis for waiving F&R's objections. *See Wilson*, 2007 WL 4179018, at *1 (noting that a 17-day delay is insubstantial). *See also Blumenthal v. Drudge*, 186 F.R.D. 236, 240 (D.D.C. 1999) (allowing objections where the delay in responding was minor); *Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F. Supp. 2d 83, 91 (D.D.C. 2005) (refusing

11

to find that plaintiffs waived discovery objections even though plaintiffs failed to timely respond to defendant's discovery requests).

21.     Finally, DigaComm is not entitled to its costs and attorneys' fees in pursuing its Petition because DigaComm's Petition should be denied. *See Caruso v. Coleman,* 157 F.R.D. 344, 350 (E.D. Pa.1994) (denying attorneys' fees where the motion to compel was granted in part and denied in part); *Willemijn Houdstermaatschaapij BV v. Apollo Computer*, 707 F. Supp. 1429, 1450 (D. Del. 1989) (same). In short, based on the facts described above, there was no bad faith on the part of F&R that would warrant awarding DigaComm's attorneys' fees and costs.

## CONCLUSION

Based on the foregoing reasons, F&R respectfully requests that DigaComm's Petition should be converted into a motion to compel and then denied.

FISH & RICHARDSON P.C.

*/s/ Cathy L. Reese*
Cathy L. Reese (#2838)
Brian M. Rostocki (#4599)
919 North Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE  19899-1114
(302) 652-5070

Dated:  April 14, 2008