IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DIGACOMM, LLC, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 08-MC-63 JJF |
| VEHICLE SAFETY & COMPLIANCE, LLC, et al., | : | |
| Defendants. | : | |

**MEMORANDUM ORDER**

Pending before the Court is the Petition For A Rule To Show Cause (D.I. 1) filed by Plaintiff, DigaComm, LLC ("DigaComm"). During adjudication of DigaComm's Petition, certain issues arose concerning the conduct of Defendants' counsel. For the reasons that follow, the Court will deny DigaComm's Petition as moot; however, DigaComm will be awarded its costs and attorneys' fees under Rule 37 in relation to the Petition.

I. **Background**

DigaComm's Petition followed the issuance in February 2008, of a subpoena by DigaComm to Fish & Richardson P.C. ("Fish & Richardson") in connection with litigation pending in the United States District Court for the Northern District of Illinois and arbitration pending in Delaware between DigaComm and Defendants Vehicle Safety & Compliance, LLC and Vehicle IP, LLC ("VIP"), et al., for whom Fish & Richardson is counsel. (D.I. 1.)

1

After issuing the subpoena, it appeared to DigaComm that Fish & Richardson had "ignored" the subpoena. As a result, DigaComm filed the Petition on March 31, 2008. (D.I. 1 at ¶10.) By its Petition, DigaComm alleged that after making multiple attempts to secure voluntary compliance from Fish & Richardson, it had "received no explanation for [Fish & Richardson's] noncompliance, no promise of immediate compliance, nor any other substantive response relating to the subpoena." (Id. at ¶14.)

In its Response to DigaComm's Petition, Fish & Richardson contended that DigaComm's subpoena "amounts to an end-run around the federal discovery rules by obtaining from [Fish & Richardson] through subpoena substantially the same documents that DigaComm sought directly ... from [Fish & Richardson's] clients, but in less time." (D.I. 5 at ¶16.) Further, Fish & Richardson argued that through multiple discussions with DigaComm's counsel, Kirkland & Ellis LLP ("Kirkland"), Fish & Richardson had "assured Kirkland that [Fish & Richardson] was in the process of gathering and reviewing the tens of thousands of pages of documents sought in order to respond to the subpeona," (id. at ¶1) and that any delay in responding to DigaComm's subpoena was "inadvertent and certainly excusable" given the magnitude and nature of the requests (id. at ¶15).

In support of its Response to DigaComm's Petition, Fish & Richardson submitted the declarations of two Fish & Richardson

attorneys involved in responding to the subpoena. Fish & Richardson, through its answering attorneys stated:

> 8. Once the subpoena actually reached Steele in [Fish & Richardson's] Redwood City, California office on March 4, 2008, through service on [Fish & Richardson's] registered agent in Delaware, Steele started the extensive process of responding to DigaComm's subpoena and coordinated with the [Fish & Richardson attorneys] that may possess documents responsive to DigaComm's subpoena. However, [Fish & Richardson] was unable to comply with the DigaComm subpoena by March 18, 2008 and, inadvertently, through miscommunications between Steele and the Delaware office of [Fish & Richardson], failed to make DigaComm's counsel aware of this fact prior to March 23, 2008.

(D.I. 6 at ¶8.)

> 5. At paragraph 14 of the Petition, it states that DigaComm's counsel sent me an email. That is correct . . . . Notice, however, that the Petition falsely describes my response. The Petition claims that I stated that "[I] would call the next day." (Pet. Para. 14) That is not what my email says, and even worse that description deceptively twists the plain meaning of the email, as the Court can see from reading the email itself. Rather, I *asked a question* of the Kirkland & Ellis lawyer about whether he could talk the next day – and he never responded to it or called me. . . . .

(D.I. 7 at ¶5) (emphasis in original) (text of the original email referred to omitted).

> 6. It was my expectation that the subpoenaing lawyer would let me know whether or not he could meet the next day, or that he would send me back an email in response, or that he would otherwise follow up with me. . . .

(Id. at ¶6.)

After DigaComm's counsel asserted and argued in its Reply Brief that "[t]he facts presented in Fish's response brief differ from the facts it relayed to DigaComm," (D.I. 9 at 2) the Court determined that an evidentiary hearing was necessary. On May 7,

2008 and May 20, 2008, the Court held hearings to resolve the subpoena compliance issues presented by DigaComm's Petition and the compliance issues presented by the briefing.

At the May 7, 2008 evidentiary hearing, Stephen Hackney, DigaComm's counsel, testified to the following communications with attorneys at Fish & Richardson:

| | |
|---|---|
| February 21 | Sent copy of subpoena, which had a return date of March 18, to Ms. Reese by Federal Express. |
| March 23 | Having received no response from Fish & Richardson, emailed a draft of the Petition to Ms. Reese and her associate, Brian Rostocki. |
| March 23 | Received phone call from Mr. Rostocki, who was unaware of who was working on the subpoena. |
| March 24 | Received email from Mr. Rostocki directing Mr. Hackney to contact John Steele. |
| March 24 | Contacted Mr. Steele by telephone, who informed Mr. Hackney that he - Mr. Steele - was in charge of responding to subpoenas and that this one must have "fallen through the cracks." Mr. Steele also stated that he needed to figure out what happened and that he would "get back to" Mr. Hackney, who emphasized the time sensitivity of the matter because of the "rocket-docket" procedure in the Illinois litigation. |
| March 26 | Having not heard further from Mr. Steele, sent Mr. Steele an email and received no response. |
| March 27 | Sent Mr. Steele another email, to which Mr. Steele responded: "We are still looking. Can we talk tomorrow?" Mr. Hackney responded that he would be out of the office and that Mr. Steele could contact his associate, Matt |

4

        Nirider.

  March 28-30  Mr. Steele did not contact Mr. Hackney or Mr. Nirider.

(Transcript of May 7, 2008 Hearing at 40-61.) Mr. Hackney further testified to being frustrated with the statements in Fish & Richardson's Answer Brief because he understood from his communications with a variety of individuals at Fish & Richardson that they "didn't know what was going on with my subpoena" and had not begun the process of complying with it. (Id. at 63.)

At the May 20, 2008 evidentiary hearing, Fish & Richardson acknowledged that there were "errors" in its Answering Brief. (Transcript of May 7, 2008 Hearing at 126-28.) For example, a footnote in the Answering Brief that represented that Fish & Richardson had not received a copy of the subpoena was incorrect (id. at 158). Fish & Richardson attorneys also testified to a miscommunication between the firm and Mr. Steele as to whom was going to coordinate the response to the subpoena, which Fish & Richardson knew of at the time it submitted affidavits in connection with the Petition. (Id. at 174.)

At the May 20 evidentiary hearing, Fish & Richardson attorneys also testified to a miscommunication within their firm which caused delay in Fish & Richardson's compliance with DigaComm's subpoena. (Id. at 188, 202.) Fish & Richardson attorneys also testified that there was a factual misstatement in an affidavit and in the email string contained in the affidavit,

5

insofar as they indicate that DigaComm's attorney, Mr. Hackney, had not responded to a March 27 email, when in fact Mr. Hackney had. (Id. at 189-92.) Fish & Richardson apologized for the error and testified that it was not deliberate, but rather due to the manner in which the email string had been organized. (Id.)

## II. Discussion

With respect to the issues of compliance, the Court concludes that an award to DigaComm of the costs and attorneys' fees incurred in litigating the Petition and the two evidentiary hearings is warranted. Pursuant to Rule 37, when a motion for an order compelling discovery is granted, or if the requested discovery is provided after the motion is filed, a court may "require the party or deponent whose conduct necessitated the motion ... to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." FED. R. CIV. P. 37(a)(5). A court must not award expenses where a movant filed the motion before making a good faith effort to obtain the discovery without court action, where the opposing party's nondisclosure was substantially justified, or where other circumstances make an award of expenses unjust. Id. As stated by Mr. Oslan, counsel for DigaComm, during the second evidentiary hearing:

> I think in this setting, there can be no dispute or even reasonable debate about why the costs for both sides were incurred. They were incurred for two reasons, [Fish & Richardson] had a failure of process, and then after we

6

filed the petition, [Fish & Richardson] got aggressive. (Tr. at 225.) The Court agrees, and will thus award reasonable costs and attorneys' fees to DigaComm.

### O R D E R

NOW THEREFORE, IT IS HEREBY ORDERED that:

1. DigaComm's Petition For a Rule to Show Cause To Fish & Richardson P.C. (D.I. 1) is **DENIED** as moot.

2. DigaComm shall submit its request for attorneys' fees and costs **within ten (10) days** of the date of this Order. Defendants shall file any objections to the reasonableness of the request **within ten (10) days** of receipt of the request.

December 3, 2008

_____
UNITED STATES DISTRICT JUDGE